IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL A. FOX,** | |
| **Plaintiff,** | **Case No. 2:10-cv-1023** |
| v. | **Judge Peter C. Economus** |
| **GMAC MORTGAGE, LLC,** *et al.* | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |

This case arises out of a foreclosure action in connection with which Plaintiff Michael Fox alleges Defendants signed and caused the filing of a false or unauthorized mortgage assignment. This matter is before the Court for consideration of motions to dismiss filed by Defendants GMAC Mortgage, LLC ("GMAC") and Jeffrey Stephan. (Dkts. 6, 7.) For the reasons that follow, Defendant Stephan's motion to dismiss for lack of jurisdiction is **DENIED,** both Defendants' motions to dismiss for failure to state a claim are **GRANTED**, and this case is **DISMISSED**.

**I.    Background**

Plaintiff's complaint makes the following general allegations. The mortgage banking industry created Mortgage Electronic Registration Systems, Inc. ("MERS") "to streamline the mortgage process and save money by using electronic commerce to eliminate paper and the need to file assignments of mortgage every time a mortgage was transferred." (Comp. ¶ 9.) In cases such as this, where MERS is not the plaintiff in the foreclosure case, MERS acts as a "nominal mortgagee" and is "named the secured party in the mortgage filed in the local real estate records as the nominee of the note holder." (*Id.* at ¶¶ 9, 10.) The complaint explains as follows:

> When a trustee of a securitized transaction initiates a foreclosure action as a plaintiff, the servicer, sub-servicer or its agent is responsible for the preparation of the papers filed in the Ohio foreclosure action. In the many securitized

> transactions in which GMAC was the servicer or sub-servicer of Ohio mortgage loans, GMAC has been responsible for the preparation of the necessary documents, including an Assignment of Mortgage assigning the mortgage from MERS to the trustee. In some cases, MERS gives servicers and sub-servicers the authority to execute Assignments of Mortgages from MERS to the trustee. However, MERS never authorizes servicers or sub-servicers to execute an Assignment of Mortgage *that includes an assignment of a note*.
>
> Despite this lack of authority, GMAC has caused Assignments of Mortgage to be prepared and executed by agents of GMAC that improperly purport to assign the note from MERS to the trustee and falsely claim that the GMAC employee, in this case Defendant Stephan, executing the assignment has authority to assign the note on behalf of MERS.

(*Id.* at ¶¶ 11–12 (emphasis added).)  Stephan testified in a deposition for a Florida state court foreclosure case that he had signed approximately 10,000 affidavits and assignments in a month and did not sign them based upon his personal knowledge.  (*Id.* at ¶¶ 14–15.)

Specific to this case, it is apparent from the complaint and the records of the Licking County Court of Common Pleas that Deutsche Bank Trust Co Americas filed a foreclosure action in that court against Plaintiff Michael Fox and non-party Barbara Fox.  (*Deutsche Bank Trust Co Americas v. Fox*, Licking County Court of Common Pleas No. 2009-cv-00205, hereinafter referred to as the "Foreclosure Action.")  Plaintiff alleges that GMAC, the mortgage loan servicer, "claims to be the holder of the promissory note and mortgage that form the basis for" the Foreclosure Action.  (Compl. ¶¶ 3, 8.)  Defendant Stephan, an employee of GMAC, allegedly signed and had notarized an assignment (the "Assignment") which was attached to the complaint in the Foreclosure Action.  (*Id.* at ¶¶ 4, 8, Ex. A.)  Plaintiff alleges that Stephan signed the Assignment "falsely claiming that he had assigned a borrower's mortgage and note from MERS to the plaintiff in the foreclosure action, even though he did not have the authority of MERS to assign a note to any party."  (*Id.* at ¶ 18.)  The Assignment, which is attached to Plaintiff's complaint in this case, does not purport to assign a note.  (*Id.* at Ex. A.)

2

**II.     Personal Jurisdiction Over Defendant Stephan**

Defendant Stephan seeks dismissal of the claims against him for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  "[A] district court . . . must first determine its own jurisdiction before proceeding to the merits." *West v. Ray*, 401 Fed. Appx. 72, 74 (6th Cir. 2010).  Accordingly, the Court turns first to Defendant Stephan's motion to dismiss under Rule 12(b)(2) before addressing both Defendants' motions to dismiss for failure to state a claim.

Plaintiff bears the burden of establishing the existence of personal jurisdiction over a defendant. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  "When the district court finds no need for an evidentiary hearing, as in the present case, 'the burden of the plaintiff is relatively slight and the district court 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (quoting *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir. 1980)).

"Personal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''  Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general." *Air Prods.*, 503 F.3d at 549–50 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)).  The Court "look[s] to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements." *Air Prods.*, 503 F.3d at 550 (citing *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988)).  The Court must engage in a two-step process.  First, the Court determines whether Ohio's long-arm statutes authorize the exercise of

3

jurisdiction over Defendant Stephan. If so, the Court then determines whether exercise of that jurisdiction comports with constitutional due process. *Air Prods.*, 503 F.3d at 550.

### A. Ohio's Long-Arm Statute

Pursuant to Ohio's long-arm statute, Ohio courts are deemed to have personal jurisdiction over a person "as to a cause of action arising from the person's . . . [t]ransacting any business in [Ohio]." Ohio Rev. Code § 2307.382(A)(1); *Concheck v. Barcroft*, No. 2:10-cv-656, 2011 U.S. Dist. Lexis 88964 at *6 (S.D. Ohio Aug. 2, 2011). The Supreme Court of Ohio has broadly construed the meaning of "transacting any business in Ohio," which does not require physical presence in Ohio. *Ky. Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 75–76 (Ohio 1990); *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235–36 (Ohio 1994). The Supreme Court of Ohio has held that the "alleged dissemination of misleading financial information to Ohio investors" constituted transaction of business in Ohio, and another Ohio court concluded that a defendant transacted business in Ohio when he purchased a horse in Ohio and utilized an Ohio court to enforce an out-of-state judgment for related damages. *Goldstein*, 70 Ohio St. 3d at 237; *Hall v. Tucker*, 161 Ohio App. 3d 245, 256-257 (Ohio Ct. App., Jackson County, May 26, 2005).

Construing the pleadings in the light most favorable to Plaintiff, Defendant Stephan executed the Assignment with the knowledge that it would be filed and relied upon in the Foreclosure Action in an Ohio court. (Compl. ¶¶ 12, 15.) Considering the Supreme Court of Ohio's broad construction of the meaning of "transacting any business in Ohio," the Court finds that Stephan's alleged actions are within the scope of Ohio's long-arm statute.

**B.  Due Process**

The Sixth Circuit has established the following three-part analysis for evaluating due process in the context of specific personal jurisdiction challenges:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prod.*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).  "[T]he first prong—purposeful availment—is the 'sine qua non for in personam jurisdiction.'"  *Id.* at 550 (quoting *S. Mach.*, 401 F.2d at 381–82).

> [P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities.  Personal jurisdiction is proper when purposeful availment has occurred because the defendant manifestly has availed himself of the privilege of conducting business [in the forum], and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.  If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant.

*Concheck*, 2011 U.S. Dist. Lexis 88964 at *7–8 (citing *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478, 479 (6th Cir. 2003); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)) (internal citations and quotation marks omitted).

Construing the pleadings in the light most favorable to Plaintiff, the Court finds that Defendant Stephan purposefully availed himself of the privilege of acting in Ohio when he executed the Assignment with the knowledge that it would be filed and relied upon in the Foreclosure Action in an Ohio court—deliberately undertaking to cause an act to be done in

5

Ohio and affecting the outcome of the Foreclosure Action. The Court concludes that the exercise of personal jurisdiction over Defendant Stephan comports with constitutional due process.

Because Stephan's alleged actions are within the scope of Ohio's long-arm statute and exercise of jurisdiction comports with due process, the Court **DENIES** Defendant Stephan's motion to dismiss for lack of jurisdiction.

### III.     Motions to Dismiss for Failure to State a Claim

Both Defendants GMAC and Stephan seek dismissal of the claims against them under Federal Rule of Civil Procedure 12(b)(6), which requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*, 129 S. Ct. at 1949–50 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).[1]

#### A.     Violation of the Ohio Consumer Sales Practices Act

Plaintiff alleges that Defendants violated the Ohio Consumer Sales Practices Act ("CSPA"), specifically Ohio Revised Code §§ 1345.02, 1345.03, and 1345.031, by executing and causing the filing of the Assignment "that was false" and by pursuing the Foreclosure Action "in spite of the false Assignment." (Compl. ¶¶ 25, 26.)

---

[1] Citing an outdated Sixth Circuit case, Plaintiff incorrectly asserts that the standard set forth in *Twombly* applies only to "complex, expensive litigation." (Dkt. 14 at 7.) In *Iqbal*, however, the Supreme Court held that its "decision in *Twombly* expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S. Ct. at 1953.

Because Plaintiff alleges no specific facts suggesting that the Assignment is false or unauthorized, this Court need not address the question of whether the CSPA provides a private cause of action against one who executes and files a false or unauthorized assignment in the course of a foreclosure proceeding. Plaintiff suggests that the Assignment is "false" because it "improperly purport[s] to assign the note . . . and falsely claim[s] that the GMAC employee, in this case Defendant Stephan, executing the assignment has authority to assign the note on behalf of MERS," while MERS allegedly "never authorizes servicers or sub-servicers to execute an Assignment of Mortgage *that includes an assignment of a note*." (Compl. ¶¶ 11, 12 (emphasis added).) However, the Assignment, which is attached to the complaint, does *not* include an assignment of a note. (*Id.* at Ex. A.)

### B. Common Law Fraud

Plaintiff alleges that Defendant Stephan committed common law fraud by signing the Assignment:

> (a) which contained representations; (b) which were material to the foreclosure proceedings; (c) some of which were made with knowledge of their falsity and others which were made with utter disregard for whether they were true [or] false; (d) which were made with the intent of misleading [the] Court and opposing parties into relying upon them; and (e) on which [the] Court and opposing party justifiably relied.

(Compl. ¶ 30.) Plaintiff makes the following allegations to support his common law fraud claim against GMAC:

> Through its agent Stephan and perhaps others, GMAC (a) made representations with respect to its foreclosure case against Plaintiff; (b) which were material to that foreclosure proceeding; (c) which were made with knowledge of their falsity or with utter disregard for whether they were true or false; (d) which were made with the intent of misleading [the] Court and others into relying upon them; and (e) on which [the] Court and the opposing parties justifiably relied.

(*Id.* at ¶ 31.)

While the complaint correctly lists the elements of a fraud claim under Ohio law, *Volbers-Klarich v. Middletown Mgmt.*, 125 Ohio St. 3d 494, 501 (Ohio 2010), a fraud claim must be alleged with particularity, Fed. R. Civ. P. 9(b) ("[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud"). Plaintiff's only allegation relevant to this claim is that Defendants executed and filed the Assignment which was "false." As discussed above, however, Plaintiff alleges no specific facts suggesting that the Assignment is unauthorized or contains false statements. He therefore fails to allege with particularity any circumstances constituting fraud.

### C. **Abuse of Process**

To support his claim of abuse of process, Plaintiff alleges that, in filing the Foreclosure Action, "Defendants set in motion a legal proceeding within a purported proper forum and with probable cause," and Defendants' actions relating to the Foreclosure Action "have perverted the proceeding in order to accomplish an ulterior purpose for which the proceeding was not designed." (Compl. ¶¶ 34, 35.)

The Court finds that such allegations are entirely conclusory and do not satisfy the pleading standard set forth in *Twombly*. *See King v. CitiMortgage, Inc.*, No. 2:10-cv-1044, 2011 U.S. Dist. Lexis 79722 at *23–24 (S.D. Ohio July 20, 2011) (Where a lender "allegedly filed the foreclosure action to recover judgment on the note and foreclosure on the secured property," this Court held that "[t]he complaint fails to identify any ulterior purpose" and dismissed the abuse of process claim.) As this Court explained in *King*, "[a]buse of process concerns filing a lawsuit to achieve goals outside of the lawsuit or results that the court is powerless to order." *Id.* at *24 (citing *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St. 3d 264, 271 (Ohio 1996)). Here, Plaintiff has identified no purpose aside from foreclosure.

**D.     Civil Conspiracy**

For his civil conspiracy claim, Plaintiff alleges that "Defendants engaged in a malicious combination involving at least two people or entities," "Defendants' malicious combination caused injury to Plaintiff," and "there exists an unlawful act independent from the conspiracy itself."  (Compl. ¶¶ 38–40.)

These allegations also fail to meet the pleading standard set forth in *Twombly*.  Moreover, even if Plaintiff alleged more specific facts, his claim would fail under the intra-corporate conspiracy doctrine, which provides that an employee acting within the scope of his employment cannot conspire with his employer.  *Bays v. Canty*, 330 Fed. Appx. 594 (6th Cir. 2009).

Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the Court **GRANTS** Defendants' motions to dismiss under Rule 12(b)(6).

**IV.     Conclusion**

For the reasons discussed above, the Court hereby **DENIES** Defendant Stephan's motion to dismiss for lack of jurisdiction (Dkt. 7)**, GRANTS** both Defendants' motions to dismiss for failure to state a claim (Dkts. 6, 7), and directs the Clerk to enter judgment for Defendants.

**IT IS SO ORDERED.**

>                              **/s/ Peter C. Economus  -  September 14, 2011**
>                              **UNITED STATES DISTRICT JUDGE**